IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TROY ANTHONY SAMSON, SR.,<br><br>Defendant. | CR. NO. 21-00046 JAO<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SENTENCE REDUCTION AND COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)** |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SENTENCE REDUCTION AND COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

Defendant Troy Anthony Samson, Sr. ("Defendant") filed a Motion for Sentence Reduction ("Motion"), seeking compassionate release pursuant to 18 U.S.C. § 3582. ECF No. 28. The Court decides this motion without a hearing pursuant to Local Rule 7.1(c). For the following reasons, the Motion is DENIED WITHOUT PREJUDICE.

**I.    BACKGROUND**

   A.    Procedural History

On April 5, 2021, the Government filed an Information against Defendant, alleging one count of Conspiracy to Distribute and Possess with Intent to

Distribute 50 grams or more of a mixture or substance containing methamphetamine, a violation of 21 U.S.C. § 846.  ECF No. 1.  On April 21, 2021, Defendant signed a Waiver of Indictment and entered into a plea agreement, admitting that he was guilty of the charge.  ECF Nos. 7–8.  On October 27, 2021, the Court sentenced Defendant to 47 months in prison and five years of supervised release, which was a significant downward departure and variance from an advisory range of 87 to 108 months.  ECF Nos. 17–18.  Defendant is incarcerated at the Federal Correctional Institution at Lompoc ("Lompoc"), a low security institution, and is expected to be released on February 1, 2024.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By Number" tab; then search for "12286122") (last visited Dec. 21, 2022).

      On September 2, 2022, Defendant requested compassionate release from the warden at Lompoc based on his medical conditions and the purported inadequacy of the medical treatment he receives there.  ECF No. 28-3.  According to the Government, the warden denied the request.  ECF No. 32.

      Defendant filed the Motion on October 21, 2022, ECF No. 28, and the Government responded on November 9, 2022, ECF No. 32.  On November 23, 2022, Defendant filed a reply.  ECF No. 39.  Defendant's relevant medical records were filed under seal by both parties with the Court's permission.  *See* ECF Nos. 31, 37.

B.  Defendant's Background

1.  Defendant's Current Condition

Defendant, who is now 52 years old, underwent a series of health scares prior to sentencing. ECF No. 39 at 9. In particular, on November 6, 2020, he was transported from the Federal Detention Center ("FDC") in Honolulu to Queen's Medical Center, complaining of chest pain. ECF No. 28-1 at 7. However, the pain resolved and he was returned to FDC after confirming that he also was not suffering from headaches, shortness of breath, or dizziness. *Id*. at 8. The following day, FDC medical staff diagnosed him with Type 2 Diabetes, hypertension (high blood pressure),[1] hyperlipidemia (high cholesterol),[2] and obesity. *Id*. On December 19, 2020, he was admitted to Pali Momi Medical Center, again complaining of chest pain. *Id*. at 9. He was then diagnosed with "Atherosclerotic heart disease of native coronary artery with unstable angina

---

[1] Hypertension, also known as high blood pressure, when uncontrolled, increases one's risk of serious health problems, such as heart attacks and strokes. *See* Mayo Clinic, "High Blood Pressure (Hypertension)," https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited Dec. 21, 2022).

[2] Hyperlipidemia "can increase your risk of heart attack and stroke because blood can't flow through your arteries easily." Cleveland Clinic, "Hyperlipidemia," https://my.clevelandclinic.org/health/diseases/21656-hyperlipidemia (last visited Dec. 21, 2022)

pectoris,[3] Essential primary hypertension, Prediabetes, Elevation of levels of liver transaminase levels,[4] and contact with and (suspected) exposure to other viral communicable diseases." *Id.* (internal quotation marks, brackets, and citation omitted).  Doctors immediately performed surgery on Samson, inserting four stents into his heart. *Id.*

After sentencing, Defendant was transferred to Federal Correctional Center Victorville, and then later to Lompoc.  *Id*.  The medical staff at Lompoc evaluated Defendant and found that he continues to suffer from angina, hypertension, heart disease, hyperlipidemia, and diabetes, and that his Body Mass Index ("BMI") once

---

[3] "Unstable angina, one of several acute coronary syndromes, causes unexpected chest pain, and usually occurs while resting.  The most common cause is reduced blood flow to the heart because the coronary arteries are narrowed by fatty buildups[.]"  American Heart Association, "Unstable Angina," https://www.heart.org/en/health-topics/heart-attack/angina-chest-pain/unstable-angina (last visited Dec. 21, 2022).

[4] "The most common cause of elevated transaminase levels are nonalcoholic fatty liver disease and alcoholic liver disease.  Uncommon causes include drug-induced liver injury, hepatitis B and C, and hereditary hemochromatosis."  Robert C. Oh, Thomas R. Hustead, Syed M. Ali, & Matthew W. Pantsari, "Mildly Elevated Liver Transaminase Levels:  Causes and Evaluation," 96 *American Family Physician* 709, 709 (2017), https://www.aafp.org/dam/brand/aafp/pubs/afp/issues/2017/1201/p709.pdf.  "Transaminitis is not a disease, but it can point to other issues that require treatment.  High levels of fat or similar problems may be causing inflammation in the liver."  Medical News Today, "What causes high transaminase levels, and what can be done to lower them?," https://www.medicalnewstoday.com/articles/321975 (last visited Dec. 21, 2022).

at Lompoc was 34.3.[5] *Id*. at 10.  He received the initial rounds of COVID-19 vaccinations and has been boosted.  ECF No. 32 at 11.

### 2.  Defendant's History And Post-sentencing Behavior

Defendant's crime involved at least one pound of methamphetamine, which he and a co-defendant shared and sold to make a profit.  *See* ECF No. 8 at 5.  He was among several lower-level dealers in a drug trafficking conspiracy that distributed methamphetamine on Hawaiʻi Island.  *See id*.  Notably, Defendant was obese at the time he committed the instant offense, *see* ECF No. 10 ¶ 101 (indicating his height and weight).

As stated in the Government's opposition to the Motion, Defendant has an extensive prior criminal record that includes eight felony convictions and 21 misdemeanor convictions.  ECF No. 32 at 32.  Several of these crimes involved firearms, domestic violence, or threats of violence.  *See id*.

Defendant does not appear to have engaged in any violations while at Lompoc.  *See* ECF No. 28-18 at 2.

---

[5] CDC, "Defining Adult Overweight & Obesity," https://www.cdc.gov/obesity/adult/defining.html (last visited Dec. 21, 2022) (describing a BMI of 30.0 or higher as "obes[e]").

C.     Conditions At Lompoc

As of this writing, Lompoc has one active COVID-19 case among inmates and zero among staff.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited Dec. 21, 2022).  Moreover, 2,355 inmates have received the initial doses of the COVID-19 vaccine; while this figure may encompass inmates who have since been released from Lompoc, that Lompoc's current population is only slightly over 1,000 inmates suggests that the rate of inmate inoculation at Lompoc is high.  *See id.* (click on "Learn more about vaccinations and view individual facility stats") (last visited Dec. 21, 2022); https://www.bop.gov/locations/institutions/lof (last visited Dec. 21, 2022).

Defendant challenges Lompoc's compliance with BOP policies.  *See* ECF No. 28-2 ¶ 8j.  He asserts, for example, that masking, social distancing, contact tracing practices, and outbreak notifications threaten inmate health.  *See id.* ¶¶ 8c-k.  He does admit that, if an inmate tests positive, the inmate is quarantined for a period of two to four weeks.  *See id.* ¶ 8e.

Defendant also asserts that Lompoc is in violation of a court order arising in a COVID-19 class-action lawsuit.  *See id*. ¶ 8l; ECF No. 28-1 at 16–17; ECF No. 39 at 9 n.4.  More specifically, he reports that the warden has not — as required in the settlement agreement — "'promptly evaluate[d] Lompoc inmates who are over

6

the age of 50 or have underlying health conditions for home confinement, imposing deadlines by which approved class members must be transferred to their homes, and prohibiting [the Warden] from . . . denying class members home confinement based on time served or prior offenses alone.'" ECF No. 28-1 (some brackets in original) (quoting *Garries v. Milusnic*, Case No. 2:20-cv-4450-CBM-(PVCx) (C.D. Cal.), ECF No. 863 (Order re: Joint Motion for Final Approval of Class Action Settlement; and Plaintiff-Petitioners' Unopposed Motion for Attorneys' Fees) at 8).

## II.   DISCUSSION

### A.   The First Step Act

Title 18, United States Code, Section 3582(c)(1)(A), allows courts to grant compassionate release motions brought either by the Director of the Bureau of Prisons or an incarcerated defendant so long as certain requirements are met:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .

7

>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (2018).  United States Sentencing Guidelines Manual ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.⁶  In *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the Ninth Circuit held that the Guideline "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(C)(1)(A) motions filed by a defendant." (brackets in original).  In such cases, the Guideline "may inform a district court's discretion . . . but [it is] not binding."  *Id*. (citation omitted).

Thus, the comment to the Guideline can offer some guidance here.  That comment explains that extraordinary and compelling reasons exist when:

>**(A)  Medical Condition of the Defendant.—**
>
>>(i)   The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of

---

⁶ The Commission's failure to amend the Guideline is likely due to its previous lack of sufficient members for a quorum.  *See* U.S. Sentencing Commission ("USSC"), "Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners," https://www.ussc.gov/about/news/press-releases/august-5-2022 (last visited Dec. 21, 2022) (noting the Senate's recent confirmation of 7 commissioners now provides the USSC "with a voting quorum for the first time in more than three years"); USSC, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited Dec. 21, 2022) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.").

>> life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2021).

Defendant bears the burden of establishing the extraordinary and compelling circumstances that would justify compassionate release. *See Aruda*, 993 F.3d at 801 ("[D]istrict courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant may raise." (internal quotation marks, alteration, and citation omitted)); *Andrews v. King*, 398 F3d 1113, 1124 n.2 (9th Cir. 2005) (Fernandez, J., concurring in part) (noting that "in the sentencing context, the burden of proving facts that would warrant a reduced sentence rests on the defendant" (citations omitted)); *see also United States v. Butler*, 970 F.2d 1017,

9

1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)).

      B.      Whether Extraordinary And Compelling Reasons Exist Here[7]

The question before the Court is not the same question addressed at sentencing. The Court is not asked to determine whether the sentence previously imposed was "sufficient, but not greater than necessary" to comply with the factors outlined in 18 U.S.C. § 3553(a)(2), but rather, to determine whether "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1). If the answer to that question is yes, then the Court is required to evaluate the Section 3553(a) factors to decide whether to reduce the incarceration term. *See* 18 U.S.C. § 3582(c)(1)(A).

Defendant seeks compassionate release based on a combination of his health and the COVID-19 risks at Lompoc associated with his health, and Lompoc's handling of the COVID-19 pandemic, including its alleged violation of the settlement agreement in the class action matter.

---

[7] The Court finds — and it is undisputed — that Defendant has met the administrative requirements for filing the Motion. *See* ECF No. 32 at 9.

1. Defendant's Health

It is undisputed that Defendant has multiple conditions that put him at a higher risk for serious complications if he were to contract COVID-19: type 2 diabetes, high blood pressure, high cholesterol, heart disease, and a history of heart attack. He has, however been fully vaccinated and boosted. In combination, Defendant's health conditions make him more vulnerable to serious complications from COVID-19 than a healthy person, but his vaccination status alleviates that risk significantly.

Scientific data reveals that Defendant's risk of death or serious illness significantly decreased once he was fully vaccinated. *See* Ctrs. for Disease Control & Prevention ("CDC"), "COVID-19 Vaccine Effectiveness Monthly Update," https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (Nov. 10, 2022) ("Being up to date on COVID-19 vaccination provides strong protection against severe disease, hospitalization, and death in all age groups.") (including COVID-19 vaccine effectiveness studies published through September 30, 2022) (last visited Dec. 21, 2022); *see also United States v. Octavio-Gonzalez*, No. 3:16-cr-00270-JO-2, 2021 WL 2104989, at *3 (D. Or. May 25, 2021) ("Vaccines are particularly effective at preventing 'severe illness and death.'" (quoting CDC, "Ensuring COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html (May 10, 2021) (last visited May 24, 2021)).

District Courts across the Ninth Circuit routinely weigh a defendant's vaccination against a finding of an extraordinary and compelling reason to grant a compassionate release motion based on the defendant's medical condition. *See*, *e.g.*, *United States v. Bremer*, CR. NO. 17-00276 LEK, 2022 WL 1229963, *3 (D. Haw. Apr. 26, 2022); *United States v. Gordon*, CR. NO. 11-00479 JMS, 2021 WL 2094470, *4 (D. Haw. May 24, 2021); *United States v. Peterson*, Case No. 1:17-cr-00232-DCN-1, 2021 WL 2402478, *3 (D. Idaho June 11, 2021) (collecting cases); *United States v. Bisel*, Case No. 10CR5016-H, 2021 WL 3634830, at *4 (S.D. Cal. Aug. 16, 2021); *Octavio-Gonzalez*, 2021 WL 2104989, at *3. While the Court does not categorically conclude that all defendants who move for compassionate release cannot meet the extraordinary and compelling reasons standard if they are vaccinated, in this case BOP's treatment of Defendant's medical conditions (including extensive pharmaceutical treatments) appears reasonable; and Defendant has not shown that his conditions "substantially diminish[] [his] ability to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt n.1. Moreover, Defendant himself has apparently refused some cardiology attention. *See* ECF No. 37 at 3, 13.

It is also worth noting that the Court was aware of nearly all of these medical conditions at the time it sentenced Defendant a little over a year ago. *See* ECF No. 13 ¶¶ 101–02. Defendant has not shown that any of the then-known conditions

have worsened to a degree that create a greater risk of serious health complications, nor that any new conditions warrant a finding of an extraordinary and compelling circumstance.

        2.        Conditions At Lompoc

Defendant contends that FCI Lompoc fails to properly enforce COVID-19 prevention measures, including masking, social distancing, and contact tracing. *See* ECF No. 28-2 ¶¶ 8c, d, f–k. The Government has not responded to these characterizations and the Court therefore does not have a basis upon which to doubt them.

However, the Court determines that Defendant's risk of infection is currently low based on Lompoc's present infection statistics, the rate of vaccination at Lompoc, and the rate of infection in the surrounding area, in addition to his own vaccination status.

Lompoc presently houses 1,007 inmates. *See* Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lof (last visited Dec. 21, 2022). As stated above, there is one inmate who currently has COVID-19. This means that the infection rate among inmates at the facility is far less than even a half-percent.

The possibility of Defendant's reinfection is further reduced by the Defendant's vaccination status and, as previously stated, the extensive vaccinations within Lompoc. Moreover, Santa Barbara County, where Lompoc resides, also has

a high vaccination rate (69.8% having received the primary series), and a "low" COVID-19 community level based on weekly metrics.  *See* Santa Barbara County Community Data Dashboard, "COVID-19:  Vaccination Totals," https://sbcdashboard.info/vaccinations (last visited Dec. 21, 2022); *see id.* "COVID-19: Cases and Death," https://sbcdashboard.info/#Cases (last visited Dec. 21, 2022) (listing the following metrics in determining a "low" COVID-19 community level:  112.88 case rate per 100,000 population; 7.4 new COVID-19 admissions per 100,000 population; 5.7% staffed inpatient beds in use by patients with confirmed COVID-19).  This means that the areas surrounding Lompoc also currently have a low COVID-19 infection rate, which is an added protection against COVID-19 within Lompoc.

Defendant's allegation that the Lompoc warden is in violation of a COVID-19-related class-action settlement agreement does not persuade the Court that it should grant the Motion.  First, it is not the Court's place to determine whether the warden is in actual violation of the settlement agreement, and second, assuming the warden is in violation, then presumably Defendant can obtain the appropriate relief through that case.

In sum, on this record, Defendant's current health status, combined with Lompoc's vaccination rate and current rate of COVID-19 infections, do not amount to extraordinary and compelling circumstances to consider reducing the

sentence.[8] The Court's finding is without prejudice to the possibility that, in the future, Defendant may be able to offer evidence that circumstances have changed warranting reconsideration of this decision.

III. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, December 21, 2022.



Jill A. Otake
United States District Judge

---

[8] Because the Court has determined that extraordinary and compelling reasons do not exist to warrant consideration of a reduction in sentence, it need not evaluate the Section 3553(a) factors.